responsibility for his prior actions. He has some mental disease or disorder that he feels is impairing his ability to rehabilitate, if you will. No matter whether I do the evaluation today, or two years ago, or five years ago, my result's going to be the same. There's not going to be any progress with Mr. McVeay. So that's where I'm being hung up, is if it were a different procedure, or a different evaluation, then I would say, okay, maybe it needs to be closer in time, but in this case, the two doctors that are testifying seem to be testifying, in my opinion, that it does not matter when we do the evaluation, this man is basically never going to meet what the factors, all of the factors to impede his recovery. They're testifying to all of those. Whether they're going to testify two years ago or now, they're not going to be any different. Am I reading that wrong? I would propose that you are, Your Honor. As I read his testimony, especially on page 56 of the transcript, he specifically stated that Mr. McVeay is working on the skills that he doesn't have, but he does need more work. If it was a situation where Mr. McVeay, no matter what he does, is never going to get better, I think he would have come out and said, no matter what he does, he's not going to get better. He wouldn't be talking about he needs to do some more work. If he's never going to get better, he wouldn't need more work. It would be a done decision. And regardless, he's just going to stand there until he dies. But that's not what Dr. Kirch and, at least in my reading of the transcript, showed us. There were questions about what level, and he kept referring to what we look at. He specifically in page 61, in response to questions by the prosecution, he said, what are we, what we are looking at. And when he's talking we, we is a plural. In my mind, he's talking about himself, Ms. Spillman, and Dr. Stanislaus, when they did the assessment back in June of 2007. That's when I look at his testimony, as you carefully review it, it seems like he's basically stating the contents of his written report. And he is not updating it. It's not current. So there's a two-year delay. We know that's what Mr. McVeigh was in June of 2007, but his hearing is in June 2007. He's in their custody. He's supervising, he sees them every day. He said, come here, we're going to do another assessment. Well, it's in June 19th. They knew for some months prior to that what the court date was. They had, the state had plenty of opportunity to bring Mr. McVeigh in. He's right under their control and do another assessment, but they didn't. But when, but when they asked Mr. McVeigh, when he testified, what progress he's made towards treatment, he says, I don't want to die in prison. That's about all he said, correct? Yes, he did. I have a very understandable, this is, and he's going to have feelings, but this is a situation which we have to use in the courts of the kid, and we have to use psychiatrists and psychologists, because in fact, we are predicting the future, especially factor number four of the four. Okay, so can't we predict the future if the future is not going to change if it's one year down the road or two years down the road? I mean, aren't you, do you have to predict the future right on top of the hearing? I mean, they predicted the future two years ago that basically, in my reading of it, this guy was victimizing at least 17 as many as hundreds of victims with pedophilia, antisocial personality disorder, narcissism, not making any progress in treatment, his proclivity for being attracted to younger-looking inmates. Is that evaluation that they made an evaluation or determination of his mental health, if you will, whether they did it two years before that or did it right at that time, it doesn't sound to me like that evaluation or that finding, if you will, was going to change. Judge, if that was the case, he says he should say, he's a psychiatrist, he's going to say, this is not going to change. He says here, we're doing what we can, but it's not going to change. He never said that. He was talking about the fact that he does need to make progress. We know that. He contradicted himself a couple of times. Once he said the last, what you refer to as the sexual fantasies, the last one he had about a younger inmate there was three months prior to the assessment, which would have been about February of 2007. And then another time, according to the transcript, he said it was 23 months prior to the assessment. If that's correct, that means it was in July of 2005. So, I mean, having deviant sexual fantasies is a concern. However, the evidence also indicates he never acted upon them. He may be talking to him, they say he may be attracted to him. But it goes to focus, again, we are trying to predict what he's going to do in the future. That's the hard fact that the trial court's got to make based on the testimony. And we feel that the testimony, as it was laid out, did not come up to that standard. Did the defendant also testify that he's no longer interested in young children? I believe he did. It's been a while since I looked at it. I'm sorry. But I believe he did. But that's, again, they're asking today. That's June 19, 2009, he's answering. Part of your argument is the incompetency of counsel for failing. You're tying this up, but let me ask this question. Sure. Incompetency of counsel for failure to request another doctor to be appointed to examine. Is that one of your? Yes, it is, Your Honor. That was one of the four or five points we raised. I didn't make the question. Maybe I've got some assistance. Thank you, Your Honor. Thank you. Thank you, Justice. May it please the Court? My name is Edward Busenica. I'll be arguing on behalf of the people this morning. I'd like to pick up some of the issues that opposing counsel discussed. Let me start with a question. Okay. Mr. Busenica, why did it take five and a half years? That's a very good question. And I think it'd be best addressed by trying to understand why the court appointed an independent medical examiner for a defendant. I think that particular decision on the part of the trial court, which, granted, we did not object to, contributed mostly to the delays that happened in this case. Because the chronology of events is this. He's examined by the court-appointed expert, and then that report is given to the defense expert. Defense expert then examines him. And by the time that process is undertaken, we realize that the first report is stale. So he's again submitted to an examination by the state's expert. That report is given to the defense expert. Defense expert examines him. And that's the two-year delay that opposing counsel is talking about here that he believes is a due process problem. I'm not sure why we didn't object. I think, as opposing counsel notes, he's not entitled to an independent expert. And I believe that was the major determining factor to the delays in this case, given the fact that he's coming up from big money to be ‑‑ he's rated up from there to be examined by his expert. That takes a lot of time. He's rated up for the court appearances. That takes a lot of time. And both sides ask for continuances on different occasions. That's very true. And to be perfectly clear, there was no speedy trial argument raised below. There's no issue regarding whether defense counsel said we need a hearing. There's a time clock running. There's no case law out there that says that there's a speedy trial right in a recovery proceeding. And it doesn't really make sense that there would be because ‑‑ What was the incumbency of counsel argument regarding due process violation for not getting the case up? It's difficult to work that argument out because there's no evidence presented that this fellow recovered. He had an independent expert. Presumably his independent expert didn't opine that he was recovered. I don't know how we can expect defense counsel to have rushed into court with no case to present. All we have is someone committed under the act who doesn't want to die in prison. We asked him himself if he thought he was recovered. Rather than answer that question, he said that just behind his petition is that he didn't want to die in prison. He's unwilling to speculate himself whether he was recovered. So I don't know what we can expect defense counsel in that position to do. Let me ask you the same question I asked other counsel. Is there testimony in the record from the defendant that he's no longer interested in children sexually? I actually don't remember the record specifically, but I would ‑‑ I don't believe that there is. I know defense counsel suggested there may have been, but I don't believe there is. But there is a question. We asked him whether he thought he was recovered, and he wouldn't answer that question. He said he didn't want to die in prison. And with regard to the courtesy of the opinion of Dr. Karich, I think what we did in this case is absolutely the best we could have done. We ‑‑ he was examined. The reporters produced defense counsel examined him. And then rather than, you know, two years passed, rather than have him examined again, we asked Dr. Karich to bring his opinion current on the stand. I think that's the best we could have possibly done. Otherwise, we would have faced another two‑year delay with the exchange and expert reports. Had there not been an independent expert, I think we could have obviously had a much more timely hearing. And the actual report could have been ‑‑ date could have been more contemporaneous to the actual trial date. But with what we were presented with, I think we did absolutely the best we could have. And that was to ask Dr. Karich to bring his diagnosis current on the stand. And there was nothing to ask Dr. Karich about as far as I can tell by defense counsel. I don't know what defense counsel could have done. There's no expert opinion to rely on. The experts that testify here are the experts in this state.  And as you pointed out, Justice Shostak, there is not much hope, according to the experts, for Dr. or for Mr. McMahon's recovery. They're not hopeful at all, and that's demonstrated in the record. Would the defense, if we did remand it to be re‑evaluated to the current, to have them re‑evaluated currently, do you believe that they would ‑‑ or I should ask, do you think they would meet the Strickland standard if the ineffectiveness alleged, not getting a more current evaluation, do you believe that the results would be any different? The prejudice problem is Strickland. There's no indication in this record that there would be. Well, it doesn't, in the way I was looking at it and reading Karich as well as Daniel, it sounds to me like the evaluation would not be any different than it was two years ago at the time. How does Dr. Karich give a current opinion when he hasn't examined the defendant, hasn't examined any records regarding the defendant's condition and treatment for the two‑year period and relies, I assume he relied primarily on his test two years prior to give a current opinion? He runs the program. I don't believe there's any case. I'm sure he's reviewed these records. I don't know if it's demonstrated in the record, but in the Brown opinion in 2004, even at that point he was running this program, he looks at all the records. He may not be the person actually in the ‑‑ In the sessions. Right, right. So he's reprised of everything. This is his baby. Well, and as a result of some decisions not only by this court but by the Illinois Supreme Court, they've gone to hiring persons in addition to Mr. or Dr. Karich. Sure. Because of some question about maybe his certification, for lack of a better term. That's exactly right. As far as the Strickland standard and the two‑year delay, I don't believe it's prejudiced because there's no indication in any of the reports that he could have been rehabilitated. And more importantly, there's no impediment upon him filing another recovery petition. He just had to wait a year. I'm surprised he doesn't have one going right now. He just had to wait a year from the last determination by the trial court. So if he's recovered, he should file another petition and let them show him. The state has the burden in the commitment hearing, and they also have the burden in the recovery hearing, correct? That's true. Now, one of the complaints or one of the arguments made in Apon's brief is that this looked almost like a commitment hearing. It didn't look like a hearing to indicate recovery. Is there any practical difference when you're dealing with these issues if you have the burden of proof both times? Your Honor, this answer might be a little more detailed than you were hoping. I think what happened was in Traynor, the burden got reversed. It used to be on the defendant to prove he was recovered. And as a result of that, I think state attorneys haven't been using the statute very much, so there's not much case law since the burden was reversed. Obviously, there's no test out there. The defense counsel points that out. We acknowledge it. But establishing that he is a sexually dangerous person is absolutely no different. It's no different from saying that he hasn't recovered from previously being a sexually dangerous person. If anything, I would think requiring them to prove he hasn't recovered would be a lesser burden on us than actually going out and proving again that he is sexually dangerous. What's our standard of review? It's beyond reasonable doubt. The statute's been amended during the pendency of his petition, but we sort of blow that it was beyond reasonable doubt. We were unsure, so we said you better go with beyond reasonable doubt because that's what was returned. So standard of review, I mean, is people versus cow and supply looking? Do we look at the evidence and like most favorable to the state, et cetera? Or is it a manifest way type of test? I apologize, Your Honor. I was talking about burden of proof. Since the burden of proof was beyond reasonable doubt, I apologize to Collin's burden of standard of review. That was the best I could do. There's no case law specifically on this issue of what standard of review this court should utilize, but I think it would be appropriate to use the Collin standard, and whether any rational finder of fact could have found the defendant remains sexually dangerous I believe is what we should use. But after, since it's now clear and convincing, going forward it's going to be a manifest weight standard for this particular case since it's prior to the amendment to the statute, I would suggest the Collin standard applies. But do you think in any event it would be de novo? I noted the defendant raised that in terms of statutory construction argument in his reply brief. I don't see how that would apply. There are no standards for, different standards for recovery proceedings. I think that whole argument depends on this court accepting the fact that a recovery proceeding has to be markedly different from an initial commitment proceeding. And there's simply no precedent for that. So I don't think a de novo standard would be appropriate. Are there no further questions? We would ask that this court affirm the trial court. Thank you. Rebuttal. I'll be very brief. Just three quick points. Mr. Pazurka says he's sure that Dr. Kerich reviewed the records. Well, he may be sure, but there's nothing in the record before you that says he reviewed anything, that he had any contact other than looking at newspaper articles or sharing a joke or answering a staffing question. That's the only thing the record has. Well, how was he able to testify to that new finding? Because he wasn't challenged on it by the judge. The state didn't set up his basis of knowledge. And there was no objection raised by the APD, the assistant public defender, to him giving an opinion without such a basis. And her cross-examination, she didn't go to the APD and go into that either. The new recovery petition is totally different, judges. Now, if he files a recovery petition, there's two major factors. Instead of the state having a burden beyond a reasonable doubt, it's now a reduced burden on them of clear and convincing evidence because of the statutory amendment. And secondly, there's no guarantee that if he files one now, he'll get a Dr. Myers lawyer or some other qualified independent psychiatrist or psychologist to look at his case to give him an outside view other than what's been done at the Department of Corrections. We remember that they stress the obligations on the Department of Corrections to provide treatment that will work in this case. And it is important to know that it is different. The burden that is placed on the state at the original commitment proceeding remains beyond a reasonable doubt. But once the applicant files a petition for recovery in Section 9 of the Act, then the state has a reduced burden by clear and convincing evidence. And with that, I will see you the rest of my time. Does the present statute say it's retroactive? In other words, if you reverse this case, would it go back to the old standard or the new standard? The statute is silent on that issue. Well, it's silent on the issue, but in general, it's not retroactive. That's correct, yeah. All right. Thank you. In case you take another advice, we stand in recess.